UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HOUSING AUTHORITY OF THE CITY OF HOBOKEN,<br><br>                      **Plaintiff,**<br><br>v.<br><br>CARMELO GARCIA,<br><br>                      **Defendant.** | Civ. No. 16-cv-4069 (KM)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

This matter comes before the Court on the motion of the plaintiff, Housing Authority of the City of Hoboken (the "Authority"), pursuant to 28 U.S.C. § 1447, to remand this removed action to State court. (ECF no. 7) For the reasons stated herein, the motion to remand is granted.

### A. Procedural History

On April 29, 2016, the Authority filed a complaint against the defendant, Carmelo Garcia, former Executive Director of the Authority ("Garcia"), in the Superior Court of New Jersey. *Housing Authority of the City of Hoboken v. Garcia,* Docket No. L-1722-16 (Law Division, Hudson County).[1] The complaint asserts only state law claims: breach of an employment contract (count one),

---

[1] The following abbreviations are used herein:

    Compl. = Complaint in removed case, ECF no. 1-1

    CCS = Civil Cover Sheet, ECF no. 1-3

    Br. = Memorandum of Law in Support of Plaintiff's Motion to Remand, ECF no. 7-1

    Opp. = Memorandum of Law in Opposition to Plaintiff's Motion to Remand, ECF no. 16

    Reply = Memorandum of Law Supporting Plaintiff's Motion to Remand and Reply to Defendant's Opposition, ECF no. 17

1

breach of the covenant of good faith and fair dealing (count two), and breach of fiduciary duty (count three). The gravamen of the complaint is that Garcia accepted political bribes in exchange for awarding contracts to unqualified contractors. In so doing, the Authority alleges, Garcia violated internal policies and state ethical laws; he also allegedly failed to follow federal and similar (but stricter) state procurement laws. The Authority was allegedly damaged financially as a result.[2]

On July 6, 2016, Garcia filed a notice of removal to this Court, attaching, *inter alia,* the state court complaint. ("Notice", ECF no.1) The Notice invokes the court's federal-question jurisdiction under 28 U.S.C. § 1331, asserting as a basis the pertinence of the Authority's claims "to the application of U.S. Department of Housing and Urban Development ("HUD") regulations and federal procurement law." (Notice ¶¶ 5–6)

On October 5, 2015, the Authority filed this motion to remand the action to State Court. (ECF no. 7) Garcia has filed papers in opposition (ECF no. 16), to which the Authority has filed a reply (ECF no. 17).

### B. Discussion

Garcia removed this case pursuant to the federal removal statute, 28 U.S.C. § 1441. Under 28 U.S.C. § 1441(a), a defendant may remove a civil action from the state court if the case could have been brought originally in federal court. What that means, in this context, is that the complaint either asserts a federal-law claim, *see* 28 U.S.C. § 1331, or the parties are citizens of different states and the amount in controversy exceeds $75,000, *see* 28 U.S.C. § 1332(a). As in any federal litigation, "the party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court." *Frederico v. Home Depot,* 507 F.3d 188, 193 (3d Cir. 2007). Removal is strictly construed and doubts are

---

[2] Garcia did not answer the complaint. Instead, Garcia filed his own action in the same State court on May 6, 2016, seven days after the Authority filed its complaint. According to the Authority, Garcia's complaint pleads state law claims arising out of the facts, relating to the Authority's termination of Garcia's employment. (*See* Notice ¶3, Pl. Br. 3–4)

resolved in favor of remand. *See Samuel-Bassett v. Kia Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004).

Garcia's basis for removal of the case is this Court's federal question jurisdiction under 28 U.S.C. § 1331.[3] That section provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *Id.*

The plaintiff—here, the Authority—is master of its complaint, and can decide whether to assert a federal claim, a state claim, or both. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S. Ct. 2425 (1987). In analyzing federal subject matter jurisdiction, the courts have traditionally looked to the "well-pleaded complaint" rule. *Id.* That rule holds that a cause of action "'arises under' federal law, and removal is proper, only if there is a federal question presented on the face of the plaintiff's properly pleaded complaint." *DeJoseph v. Continental Airlines, Inc.*, 18 F. Supp. 3d 595, 599 (D.N.J. 2014) (citing *Dukes v. U.S. Healthcare*, 57 F.3d 350, 353 (3d Cir. 1995)). *See also Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 832, 122 S. Ct. 1889 (2002) (particularly instructive in that it took a subsequent statutory amendment to create an exception to the well-pleaded complaint rule that now encompasses patent-law counterclaims, *see* 28 U.S.C. § 1454(a)). Thus, for example, "'a case may not be removed to federal court on the basis of a federal defense,' even if the plaintiff's complaint anticipates such defense." *Green Tree Servicing LLC v. Dillard*, 88 F. Supp. 3d 399, 401 (D.N.J. 2015) (quoting *Caterpillar*, 482 U.S. at 392). Likewise, "a counterclaim—which appears as part of the defendant's answer, not as part of the plaintiff's complaint—cannot serve as the basis for 'arising under' jurisdiction." *Holmes Grp., Inc.*, 535 U.S. at 831.

This is an action based on breach of contract and breach of fiduciary duty—quintessential state law claims. The notice of removal nevertheless

---

[3] Diversity of citizenship is not alleged. *See* 28 U.S.C. § 1332. At any rate, the complaint indicates that the Authority transacts business, and Garcia resides, in Hudson County, New Jersey. (*See also* CCS (listing both parties as Hudson County residents).)

asserts that the Authority's claims arise under federal law. (*See* Notice ¶ 5) In support of that assertion, Garcia advances two arguments: first, that the Authority's breach of contract and fiduciary duty claims are based in part on allegations that Garcia failed to comply with HUD regulations and federal procurement law (*id.*);[4] and second, that the HUD Litigation Handbook requires the Authority to obtain prior written approval from HUD Regional Counsel before initiating this lawsuit against Garcia. (*id.* 5–6).

### 1. Grable *"Embedded" Jurisdiction*

The Authority's complaint asserts state-law causes of action, and contains no claim expressly arising under federal law. Nevertheless, the United States Supreme Court has recognized a "'special and small category' of cases in which arising under jurisdiction still lies," even though the claims originate in state law. *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (quoting *Empire*

---

[4]     Garcia also states, without fully developing any argument, that the Complaint makes HUD a party to the action. (Opp. 3–4) It is true that 28 U.S.C. § 1345 provides that district courts have original jurisdiction over "all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress" except where otherwise provided by Congress. HUD, however, is not actually a plaintiff in this action. HUD is not included in the complaint's case caption, the civil cover sheet submitted by Garcia's attorney, or the caption for any brief or paper filed in this case. There is no indication that the Authority intends to amend the complaint to include HUD as a plaintiff. The Authority's complaint is not brought under any statute expressly authorizing HUD to sue Garcia.

Garcia's contention is based on the Complaint's inclusion of identificying information about HUD in a section of the Complaint entitled "parties." (*See* Compl. ¶ 4 (The United States Department of Housing and Urban Development ("HUD") is a federal agency"); *cf. id.* ¶ 1 ("Plaintiff is a New Jersey quasi-municipal corporation governed by the New Jersey Local Redevelopment and Housing Law . . . ."); *see also* CCS) This is clearly offered as necessary background; HUD is not a party.

Moreover, Garcia's second argument against remand contradicts the notion that HUD is a party to this lawsuit. That argument rests on his citation of section 3-3(b) of the HUD Litigation Handbook, a provision specific to "non-federal party litigation." Such non-federal party litigation is defined as "litigation in which the Department has an interest because of the involvement of a HUD Assistance Recipient's HUD-funded activities but in which *neither the Department nor an employee in an official capacity is a party*." (Opp. Ex. A at I-3 (emphasis added))

4

*Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699, 126 S. Ct. 2121 (2006)). This case does not fall into that special and small category.

The seminal case describing such "embedded," or implied, federal-question jurisdiction is *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 125 S. Ct. 2363 (2005). Citing *Grable*, the Third Circuit has identified certain relevant factors:

> First, the plaintiff's state law claim must "necessarily raise a stated federal issue," *Grable*, 545 U.S. at 314, 125 S. Ct. 2363, meaning that an element of the state law claim requires construction of federal law. *Manning*, 772 F.3d at 163. Second, this federal element must be "actually disputed and substantial." *Grable*, 545 U.S. at 314, 125 S. Ct. 2363. With respect to this factor, the Supreme Court has distinguished cases such as *Grable* that present a "nearly pure issue of law" that would govern numerous other cases, from those that are "fact-bound and situation-specific." *Empire*, 547 U.S. at 700–01, 126 S. Ct. 2121 (internal quotation marks omitted). Relatedly, for a case to involve a "substantial" federal issue, it must be one significant "to the federal system" as opposed to only the parties. *Gunn v. Minton*, — U.S. —, 133 S. Ct. 1059, 1065–66, 185 L.Ed.2d 72 (2013). Third, the case must be one "which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314, 125 S. Ct. 2363.

*MHA LLC v. HealthFirst, Inc.*, 629 F. App'x 409, 412–13 (3d Cir. 2015) (footnote omitted).

The Authority argues that none of these *Grable* factors are present here. (*See* Opp. 8–14). *Desktop Alert, Inc. v. ATHOC, Inc.*, No. 215CV8337ESJAD, 2016 WL 1477029, at *5 (D.N.J. Feb. 24, 2016), *report and recommendation adopted*, No. CV158337ESJAD, 2016 WL 1450551 (D.N.J. Apr. 13, 2016) (The

5

*Grable* factors are "conjunctive, and thus a failure of even a single factor will render federal 'arising under' jurisdiction inappropriate."). I agree.[5]

The first factor is not satisfied because no element of the Authority's state law claims requires construction of HUD regulations or federal procurement laws. Under New Jersey law, "[t]o prove a breach of fiduciary duty, the plaintiff must prove: (1) the existence of a fiduciary relationship between the parties, (2) the breach of a duty imposed by that relationship, and (3) harm to the plaintiff." *Inventory Recovery Corp. v. Gabriel*, No. 2:11-CV-01604 WJM, 2012 WL 2990693, at *4 (D.N.J. July 20, 2012). "To plead a breach of contract claim in New Jersey, Plaintiff, must allege that (1) there was a contract; (2) that contract was breached; (3) the breach resulted in damages; and (4) the person suing for breach performed his own contractual duties." *Id.* As to the implied covenant of good faith and fair dealing:

> This obligation to perform contracts in good faith has been interpreted in New Jersey to mean that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Id.* at 170. New Jersey law also holds that a party to a contract can breach the implied duty of good faith even if that party abides by the express and unambiguous terms of that contract if that party "acts in bad faith or engages in some other form of inequitable conduct." *Id.* A claim for breach of an implied obligation can be pled alongside a breach of contract claim as an alternative form of liability. *See Id.* at 163.

*Inventory Recovery Corp. v. Gabriel*, No. 2:11-CV-01604 WJM, 2012 WL 2990693, at *5 (D.N.J. July 20, 2012).

I go beyond formalism, however, and consider the particular breaches that are alleged. Count one of the complaint alleges that Garcia breached his employment agreement by "failing to comply with N.J.S.A. 40A-11-1 *et seq.*, N.J.S.A. 40A:12A-17 and N.J.S.A. 40A:12A-18 in his dealings with Authority

---

[5] *Grable* has variously been described as identifying three or four factors. Compare *MHC, supra* (three factors), *with Desktop Alert, supra* (four). This disparity seems to reflect different methods of counting, not any difference in substance.

vendors/contractors and in his dealings with the Board."[6] The breach of contract alleged, then, is that Garcia failed to comply with New Jersey statutes, not federal law or regulations. Even if federal laws *could* be cited as evidence, as background, or as an alternative basis for a claim, their construction would not be *necessary* for the Authority to prevail on its claim.[7]

Count three alleges that Garcia breached a fiduciary duty owed to the Authority, in part by "not complying fully with state and federal regulations when procuring contracts . . . ." (Compl. ¶ 153). True, "federal regulations" are mentioned. But again it is clear that construction of federal regulations is not *necessary* in order for the Authority to prevail; the Authority can, and does, rely on noncompliance with state regulations. *See Sullivan v. Novartis Pharm. Corp.*, 602 F. Supp. 2d 527, 534–35 (D.N.J. 2009) (*Grable* test not met where federal issues embedded in punitive damages claim were not dispositive); *Lougy v. Volkswagen Grp. of Am., Inc.*, No. CV 16-1670 (JLL), 2016 WL 3067686, at *3 (D.N.J. May 19, 2016) (rejecting jurisdiction under *Grable* where claim was "based on alternative theories, at least three of which have no necessary federal element."); *Urata v. Canare Elec. Co.*, No. CIV.A. 12-5704 JLL, 2013 WL 2395049, at *7 (D.N.J. May 29, 2013) (declining *Grable* jurisdiction where "[i]t is clear from the Complaint and briefing that Urata can prove all the elements of his claims without resorting to any analysis or interpretation of any federal issue.").

---

[6] Those cited statutes govern creation of a housing authority and the office of Executive Director.

[7] It is not enough to hypothesize that one alternative theory underlying a claim might implicate federal law. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 810, 108 S. Ct. 2166, 2174 (1988), held that "a claim supported by alternative theories in the complaint may not form the basis for § 1338(a) jurisdiction unless [federal] law is essential to each of those theories." That case pertained to jurisdiction under 28 U.S.C. § 1338, which is specific to patents, plant variety protection, copyrights, and trademarks. But the same reasoning applies here. Where alternative theories may form the basis for stating a claim, and not all theories implicate federal issues, it follows, logically, that construction of federal law is not required to meet an element of the state law claim. *See also Gunn v. Minton*, 133 S. Ct. 1059, 1064, 185 L. Ed. 2d 72 (2013) ("[W]e have interpreted the phrase 'arising under' in both sections identically, applying our § 1331 and § 1338(a) precedents interchangeably").

I turn to the *Grable* factor concerning whether any federal issue is "actually disputed and substantial." I accept *arguendo* that federal procurement laws and regulations might be implicated, at least in a general way, as evidence of whether Garcia breached his contract and duties. But the parties have not "identified a dispute over the meaning of particular [federal] statutory text." *MHA LLC v. HealthFirst, Inc.*, 629 F. App'x 409, 414 (3d Cir. 2015). Nor have they "call[ed] into question the validity of a federal statute or the conduct of a federal actor." *Id.*[8] Rather, the complaint presents the type of "fact-bound and situation-specific" scenario, significant to the parties, but not of consequence to the interpretation or development of federal law. *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 701, 126 S. Ct. 2121, 2137 (2006); *Gunn v. Minton*, 133 S. Ct. 1059, 1066 (2013) ("[I]t is not enough that the federal issue be significant to the particular parties in the immediate suit . . . . The substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole."); *see also Merrell Dow Pharm. Inc. v.*

---

[8] Garcia was not a "federal actor" as such, but rather an employee of a "quasi-municipal corporation . . . governed by an independent Board of Commissioners." (Compl. ¶ 1) Although "a housing authority is an agency of municipal, state and federal government," *Wester v. City of Asbury Park*, 299 N.J. Super. 358, 364, 690 A.2d 1130, 1134 (Law. Div. 1996), courts have generally declined to consider housing authorities federal agents. *See, e.g., Staten v. Hous. Auth. of City of Pittsburgh*, 638 F.2d 599, 603 (3d Cir. 1980) ("While a great deal of funding for the Housing Authority comes from the federal government, that funding alone does not establish an agency relationship between the Housing Authority and the federal government. Rather, if the State agency qualifies for Federal assistance (42 U.S.C. § 1440(b)(1)), the federal government becomes a guarantor of the Authority's obligations . . . . Given both the federal and state statutory schemes for Housing Authorities, we find that defendant, Housing Authority is not an 'agency' of the United States immune under section 2412."); *Hous. Auth. of City of Bayonne v. Hanna*, No. CIV. A. 08-5988 FSH, 2009 WL 1312605, at *3 (D.N.J. May 11, 2009) (declining to find federal question jurisdiction in suit brought by housing authority "simply because federal funding or reference to federal regulations in [a contested] lease is involved"); *see also O'Keefe v. Dunn*, 89 N.J. Super. 383, 395, 215 A.2d 66, 73 (Law. Div. 1965), aff'd, 47 N.J. 210, 219 A.2d 872 (1966) ("[T]he statutory provisions providing for the establishment of a housing authority created an independent public corporation unique in character. It is unique because it is to be simultaneously an agency of municipal, state and federal government.") Additionally, as noted, the provisions of the HUD Litigation Handbook that Garcia himself cites are directed to "non-federal party litigation." (*See* Opp. 5–6 & Ex. A)

*Thompson*, 478 U.S. 804, 817, 106 S. Ct. 3229, 3237 (1986) (state law negligence suit which relied on an asserted violation of the federal Food, Drug, and Cosmetic Act to establish a rebuttable presumption of negligence did not arise under federal law).

Indeed, presaging *Grable*, the Third Circuit long ago explained:

> [A]n action under 28 U.S.C. § 1331(a) arises only if the complaint seeks a remedy expressly granted by federal law or if the action requires construction of a federal statute, or at least a distinctive policy of a federal statute requires the application of federal legal principles. "[T]he fact that a contract is subject to federal regulation does not, in itself, demonstrate that Congress meant that all aspects of its performance or nonperformance are to be governed by federal law rather than by the state law applicable to similar contracts in businesses not under federal regulation."

*Virgin Islands Hous. Auth. v. Coastal Gen. Const. Servs. Corp.*, 27 F.3d 911, 916 (3d Cir. 1994) (quoting *Lindy v. Lynn*, 501 F.2d 1367, 1369 (3d Cir.1974)). Here, neither party has even alleged this much—*i.e*, that Garcia's employment contract was subject to federal regulation—let alone that the question of performance and breach is governed by federal law.

The final factor (the federal-state balance) is by its nature somewhat amorphous. But it is Garcia who bears the burden of establishing federal jurisdiction. He raises no reason to think that this case is one "which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314.

Garcia's brief does not address the *Grable* test at all; he simply cites "numerous references to federal law in [the Authority's] complaint." (Opp. 4). Under the *Grable* case law, however, it is not sufficient that a party to a state law contract operates within a web of federal laws or regulations. Nor do mere references to federal law create federal jurisdiction unless the *Grable* factors are satisfied. In sum, the Authority's complaint does not, by referring to HUD regulations and federal procurement laws, fall into the "special and small"

9

category of cases asserting state law claims that nevertheless arise under federal law.

### 2. *HUD Authorization to Litigate*

Garcia's second theory is that the Authority was required to obtain approval from HUD Regional Counsel before initiating its lawsuit, and that the question of whether it did so is a federal law question. This theory fails to persuade.

First, the cited preapproval requirement appears in a HUD Litigation Handbook. (Garcia appends a copy to his brief in opposition to the Authority's motion. *See* Opp., Ex. A (ECF no. 16-1).) There is no showing, however, that the Handbook creates enforceable rights, and the law is generally to the contrary. *See, e.g., Thorpe v. Housing Auth. of City of Durham*, 393 U.S. 268, 275, 89 S. Ct. 518 (1969) ("[T]he various 'handbooks' and 'booklets' issued by HUD contain mere 'instructions,' 'technical suggestions,' and 'items for consideration.'"); *Vandermark v. Hous. Auth. of City of York*, 663 F.2d 436, 441 (3d Cir. 1981) (declining to give HUD's Section 8 handbook the same force as a regulation); *Williams v. Hanover Housing Auth.*, 871 F. Supp. 527, 531–32 (D. Mass. 1994) (collecting cases and stating: "Courts have consistently held that government agenc[ie]s' handbooks are not legally binding, but merely advisory").

Second, the factual predicate of this issue (to the extent it may be an issue) is lacking. The Authority has submitted a letter of approval from HUD Regional Counsel that expressly grants the Authority permission to commence its lawsuit against Garcia. The approval letter is dated April 15, 2016 (*i.e.*, two weeks before the Authority filed its complaint on April 29, 2016). (*See* Affidavit of Joseph A. Manfredi, Ex. A (ECF No. 17-2)).[9] This administrative step, however necessary, does not raise a "substantial and disputed" issue.[10]

---

[9]  The Authority's motion attaches this extrinsic approval letter, just as Garcia, in response, attaches the HUD Litigation Handbook. Because this motion for remand

10

### C. Conclusion

For the reasons stated above, the motion of the plaintiff, Housing Authority of the City of Hoboken, to remand this case to state court, pursuant to 28 U.S.C. § 1447, is GRANTED. A separate order will issue.

Dated: January 5, 2017

_____
HON. KEVIN MCNULTY, U.S.D.J.

---

presents a jurisdictional challenge, it is permissible for the Court to consider them: "[T]he Court may look to documents outside the pleadings in order to assess jurisdictional facts sufficient to assure the Court of the propriety of its adjudication of a particular claim." *Christie v. Pub. Serv. Elec. & Gas Co.*, No. CIV. 04-5978 (HAA), 2006 WL 462588, at *6 (D.N.J. Feb. 24, 2006).

[10] To venture a little farther into the realm of alternative arguments, this alleged federal-law theory, if it could be asserted, would probably be asserted as a defense. As explained *supra*, under the well-pleaded complaint rule, a defendant's federal defense is not a basis for federal jurisdiction. *Caterpillar Inc.*, 482 U.S. at 392.

11